UNITED STATES DISTRICT COURT
MDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MAE ROBIN PORTER,**

    Plaintiff,

v.                                                            Case No.: 8:17-cv-947-T-30AAS

**NANCY A. BERRYHILL, acting
Commissioner of Social Security,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff Mae Robin Porter seeks judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying her claim for Title II Disability and Disability Insurance Benefits ("DIB"), Widow's Insurance Benefits and Title XVI Supplemental Security Income ("SSI"). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (the "ALJ"), the administrative record, and the pleadings and joint memorandum submitted by the parties, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

    Ms. Porter applied for disability benefits alleging disability beginning May 1, 2010. (Tr. 21, 247, 252, 257). Disability examiners denied Ms. Porter's application at the initial and reconsideration levels. (Tr. 162-73, 177-194). The ALJ held a hearing and, on May 17, 2016, the ALJ issued a decision finding Ms. Porter not disabled. (Tr. 18-42). The Appeals Council denied Ms. Porter's request for a review of the ALJ's decision, making the ALJ's decision the final

1

decision of the Commissioner. (Tr. 2-6). Ms. Porter now seeks review of the Commissioner's final decision in this court. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Statement of the Case

Ms. Porter was fifty-two years old on the alleged disability onset date and fifty-eight years old at the time of the hearing before the ALJ. (Tr. 35). Ms. Porter has a high school education and past relevant work experience as a home health aide and a secretary. (Tr. 34-35, 288). Ms. Porter alleges disability due to hemeochromatosis, Hepatitis C, hyperthyroidism, bipolar disorder, Post Traumatic Stress Disorder, panic attacks, stress disorder, polysubstance dependence (in remission), and avoidant personality disorder. (Tr. 287).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), she is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines a

claimant's residual functional capacity ("RFC").[1]  Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing her past relevant work or other work that exists in the national economy, then she is disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Here, the ALJ determined Ms. Porter had not engaged in substantial gainful activity since the alleged disability onset date.  (Tr. 24).  The ALJ then concluded that Ms. Porter had the following severe impairments: Hepatitis C infection, hemochromatosis, thyroid disorder, bipolar disorder, panic disorder, anxiety, attention deficit hyperactivity disorder, polysubstance abuse in remission and social phobia.  (*Id.*).  Despite these findings, the ALJ found that Ms. Porter's impairments or combination of impairments did not meet or medically equal the severity of the Listings.  (Tr. 25).

The ALJ then found Ms. Porter had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[2] with the following limitations:

> [Ms. Porter] cannot climb ladders, ropes, or scaffolds; can frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; [Ms. Porter] can understand and remember instructions, maintain concentration, pace and persistence, relate to other individuals, and adapt to work settings sufficiently to perform simple, repetitive work duties; [Ms. Porter] can only occasionally interact with other individuals including known clients and customers, coworkers, supervisors, and unknown members of the general public; [Ms. Porter] cannot perform fast-paced work, and cannot tolerate sudden changes to work setting or routine.

---

[1] "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue*, 400 Fed. Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010).  Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his ... impairments.'" *Hanna v. Astrue*, 395 Fed. Appx. 634, 635 (11th Cir. Sept. 9, 2010) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004)).

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. §§ 404.1567(c), 416.967(c)

(Tr. 27). Based on this findings, the ALJ determined that Ms. Porter could not perform any of her past relevant work. (Tr. 34). However, the ALJ further determined that Ms. Porter could perform jobs that exist in significant numbers in the national economy, specifically as a cleaner, kitchen helper, and grounds keeper. (Tr. 35-36). Therefore, the ALJ concluded that Ms. Porter was not disabled. (Tr. 36).

## III.   ANALYSIS

### A.   Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether substantial evidence supports her findings. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* (citation omitted). Instead, the court must view the evidence as a whole, considering evidence that is both favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations) (citation omitted).

**B.     Issues**

Ms. Porter contends that the ALJ failed to properly address her mental impairments in his RFC assessment.[3] (Doc. 18, pp. 19-21). In response, the Commissioner argues that substantial evidence supports the ALJ's RFC determination. (*Id.* at pp. 21-25).

A claimant's RFC is the most she can do in a work setting despite her impairments. *Phillips*, 357 F.3d at 1238. The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. *Id.* Although no rule requires the ALJ to refer to every piece of evidence in his decision, the ALJ must discuss enough of the evidence for the reviewing court to conclude the ALJ properly considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Any failure by the ALJ to apply correct legal standards or provide enough facts for the reviewing court to determine the ALJ followed proper legal principles requires reversal. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

Here, the ALJ properly addressed Ms. Porter's mental impairments and accounted for them is his RFC assessment. The ALJ concluded Ms. Porter suffered from the severe mental impairments of bipolar disorder, panic disorder, anxiety, attention deficit hyperactivity disorder, polysubstance abuse in remission, and social phobia. (Tr. 24). The ALJ accounted for these impairments in his RFC assessment when he limited Ms. Porter to occasional interaction with other individuals, a slow to moderate paced work environment, and without sudden changes to work

---

[3] Ms. Porter also states in passing that she is disabled because the Florida Department of Vocational Rehabilitation was unable to place her in employment. (Doc. 18, pp. 19-20). Because Ms. Porter does not develop this argument further, it is waived. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (noting claimant waived issue because he did not elaborate on the claim); *see also N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). In any event, "a determination made by another agency that [a claimant] is disabled or blind is not binding." 20 C.F.R. §§ 404.1504, 416.904.

setting or routine. (Tr. 34). With respect to his decision not to impose greater mental health limitations, the ALJ noted the following:

> [Ms. Porter's] lack of mental health records from late 2010 to early 2014; the significant and admitted improvement with mental treatment; the consistently negative mental status signs of normal appearance, affect, thought content, motor activity, judgment, orientation, memory, thought process, and speech; [Ms. Porter's] normal activities of daily living; the moderate to mild GAF scores; [Ms. Porter's] attempts to work; and the medical opinions of Drs. [James] Patty, [Yamir] Laboy, [Robert] Hodes, and [Janet] Telford-Tyler.

(*Id.*).

As stated by the ALJ, although Ms. Porter alleged a disability onset date of May 1, 2010, there are minimal records pertaining to her alleged mental impairments from May 2010 through November 2014. (Tr. 414). After beginning medication and more consistent mental health treatment in November 2014, Ms. Porter regularly reported improvement of her condition. (*See* Tr. 457, 461, 470, 484-86, 491, 493, 496, 501-02). Indeed, Ms. Porter consistently showed normal mental status findings on examination. (*See* Tr. 426, 432, 436, 461, 471, 478, 482, 499, 502, 515). The ALJ properly considered Ms. Porter's lack of medical records, medication management, and examination findings when making his RFC determination. *See Weaver v. Comm'r, Soc. Sec. Admin.*, 567 F. App'x 864, 866-68 (11th Cir. 2014) (affirming the ALJ's rejection of physician's opinion in part because opinion was inconsistent with normal mental status exam findings); *Chereza v. Comm'r of Soc. Sec.*, 379 F. App'x 934, 940-41 (11th Cir. 2010) (holding substantial evidence supported the ALJ's determination that a claimant's mental impairment was non-severe because it was controlled by medication).

In addition, Ms. Porter's Global Assessment of Functioning ("GAF") scores support the ALJ's RFC assessment. The GAF scale is a mental health rating on a scale of 0-100 that estimates a person's psychological, social, and occupational capacities. *See* American Psychiatric Ass'n,

Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. 2000). A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) [or] moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* A score of 61-70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia), [or] some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships." *Id.* Here, after beginning medication for her mental impairments in November 2014 (Tr. 502), Ms. Porter's GAF scores improved to a range of 50 to 63, with an average score of 57 from November 2014 to October 2015. (*See* Tr. 457-59, 462, 465-68, 470, 472-76, 479, 481, 483-87, 489-91, 493, 496, 498, 500-01). Thus, Mr. Porter's GAF scores were consistently in the moderate and mild range.

The ALJ also properly considered Ms. Porter activities of daily living and repeated attempts to work in reaching his RFC determination. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *see also Jarrett v. Comm'r of Sec. Soc.*, 422 F. App'x 869, 874 (11th Cir. 2011) (holding that a claimant's part-time jobs and volunteer work contradicted physician's opinion of significant mental limitations). Specifically, Ms. Porter testified she kept herself "very busy" and reported significant daily activities, such as an ability to manage personal care, manage medications, cook, clean, travel, shop, handle money, search for work, write, read, and attend church services. (Tr. 61, 299-302, 325-28, 442). In addition, Ms. Porter reported she was actively seeking employment (Tr. 302), expressed a willingness to volunteer (Tr. 510), and applied for a job in the office of a church (Tr. 486).

Finally, as noted by the ALJ, psychological consultants Drs. Labor, Hodes, and Telford-Tyler reviewed Ms. Porter's medical record and opined she would be able to perform simple work.

7

(Tr. 32-33, 82-84, 95-97, 109-11, 126-28, 141-43, 155-57, 585-86). The regulations require an ALJ to consider the opinions of non-examining physicians, including state agency psychological consultants. 20 C.F.R. §§ 404.1527(f), 416.927(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion when it was consistent with the medical evidence). Here, the ALJ properly weighed and considered the opinions of Drs. Labor, Hodes, and Telford-Tyler as consistent with the other record evidence.

In light of the foregoing, the undersigned recommends the Court conclude the ALJ provided sufficient evidence to support his analysis of Ms. Porter's mental impairments and ultimate RFC determination. Therefore, the undersigned recommends affirming the ALJ's decision.

## V. CONCLUSION

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**, with each party bearing its own costs and expenses; and

(2) The Clerk of Court enter final judgment in the Commissioner's favor consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**ENTERED** in Tampa, Florida, on this 17th day of April, 2018.

*[signature: Amanda Arnold Sansone]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. *See* 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record
District Judge